THE GULF STREAM.

INLAND & SEABOARD COASTING CO. v. THE GULF STREAM.

(District Court, S. D. New York. October 25, 1893.)

COLLISION—MUTUAL FAULT—AGENT'S PURCHASE OF DAMAGE CLAIMS AT A DISCOUNT—ALLOWED FOR AMOUNT PAID ONLY.

Where one of the parties before the court in a cause of collision, or his agent, purchases at a discount damage claims for injuries to cargo, and both parties are afterwards held to be in fault, the purchased claims will not be allowed in the subsequent assessment of damages for more than the amount paid, with interest. Neither party in

fault can make a profit out of the other by the purchase of such claims at a discount. Such a purchase by the ship's agents is, in effect, a purchase by the owner as their principal.

In Admiralty. Exceptions to commissioner's report.

Owen, Gray & Sturges, for libelant.
Robinson, Biddle & Ward, for claimants.

BROWN, District Judge. The above libel was filed to recover damages to the E. C. Knight and her cargo through collision with the Gulf Stream, whereby the Knight and her cargo became a total loss. Both vessels were found in fault. 43 Fed. Rep. 895. Upon a reference to compute the damages, the value of the Knight was fixed at $10,000.

A further claim of damages to the amount of $3,270, was allowed, besides interest, for the value of 765 barrels of flour on board the Knight belonging to Whittemore & Sons, who were paid that amount by the Atlantic Mutual Insurance Company, as insurers of the flour, on October 26, 1887, and who assigned all their claim for the damages to the insurance company. On March 20, 1890, this claim was purchased from the insurance company by B. F. Clyde, and assigned to him for $1,000. One-half of another claim of $500 for the value of certain furniture shipped on board the Knight by one Trimble, was assigned by him to William B. Clyde & Co. for $150.

William B. Clyde & Co. were the general agents of the owners of the Gulf Stream; and B. F. Clyde was a member of that firm. All the above assignments were made after the libel was filed; the two latter, long after the cause was at issue and after the owners of the two vessels were before the court.

The claim in the libel being for the loss of the cargo, as well as of the ship, it was agreed, by stipulation between the parties, that B. F. Clyde and William B. Clyde & Co. should be treated as intervening for their interest. By this I understand that their claims are to be dealt with in the same manner as if they had sought payment of the assigned claims from both vessels found at fault. The respondent's proctors contend that Clyde, and Clyde & Co., are entitled to recover the full amount of the assigned claims with interest; the libelant contends that they are entitled to recover only what they paid, with interest.

1. As the Knight was a total loss, no recovery can be had by Clyde, or Clyde & Co., directly against her; but as the Gulf Stream is directly answerable for the whole loss of cargo, the one-half of whatever sum the Gulf Stream has paid, or may be liable to pay on account of cargo, should be offset against the amount decreed to the owners of the Knight against the Gulf Stream for the loss of the Knight. B. F. Clyde, and Clyde & Co., have not, in this suit at least, any direct claim against the Knight or her owners; it is only the Gulf Stream that, by way of recoupment, can offset against the amount payable to the libelant the one-half of what the Gulf Stream must pay for cargo upon the assigned claims. But Clyde & Co., and B. F. Clyde as a member of that firm, being the general agents of the Gulf Stream and her owners, stand in a fiduciary re-

lation to them, and can make no profit by the purchase of claims against them. Rothwell v. Dewees, 2 Black, 613; Church v. Insurance Co., 1 Mason, 344; Story, Ag. § 210. Hence, they cannot enforce against the Gulf Stream any more than what they have paid for the assigned claims, with interest; and, as the owners of the Gulf Stream are not legally liable beyond the latter amount, they cannot recoup or offset against the libelant more than half the latter sum.

In the view of a court of admiralty, which acts on equitable principles, Clyde, and Clyde & Co., as agents, hold the assigned claims virtually as trustees of the respondents. The adjustment of the account between the two vessels, as respects the whole loss arising from the collision through their mutual fault, should be treated, therefore, precisely the same as if the claims in question had been settled by the respondents, and the assignments made directly to them. Such an assignment, I cannot doubt, could not be enforced against the other vessel beyond one-half of the amount actually paid, with interest.

The foundation of the moiety rule in admiralty in cases of mutual fault, says Mr. Justice Bradley in The Alabama, 92 U. S. 697, "is for the better distribution of justice between mutual wrongdoers." While each is liable in solido to the innocent damage claimant, the right of each vessel to compel the other to bear half the burden is a substantial legal right, which, as the supreme court has repeatedly decided, must be carefully regarded and enforced whenever both vessels or their owners are before the court. The City of Paris, 14 Blatchf. 531, 538. See The Hudson, 15 Fed. Rep. 162, 164–166, and cases there cited. The practice inaugurated in the latter case, by which both vessels or their owners may always be brought into the cause when within the jurisdiction, was sanctioned by the supreme court in the enactment of the fifty-ninth rule, one of the objects of which was to make an equal distribution of the burden, so far as possible, as between the two vessels in cases of mutual fault. To permit one of the parties, equally answerable, to set up purchased claims for a larger amount than was paid for them, would not only be contrary to the principle and the equity of the moiety rule that each vessel shall bear half the burden, but would sometimes, as in this case, enable one of them to make an actual profit out of the other. If one-half of the original claims here presented are allowed as an offset against the libelant's demand on the Gulf Stream, the respondents would not only contribute nothing on account of these two items of cargo-loss, but would make out of them a profit of upwards of $1,000. This is contrary to equity, and contrary to the principle and design of the moiety rule. Story, Eq. Jur. § 493.

In cases of a community of interest in a common title, such as that of two devisees, or tenants in common, the purchase of an outstanding incumbrance by one of the tenants in common, or even by the husband of a coheiress, has been held to be for the benefit of all the other interests, upon contribution to the consideration actually paid. Van Horne v. Fonda, 5 Johns. Ch. 407; Lee v. Fox,

6 Dana, 176; and these decisions were approved in Rothwell v. Dewees, 2 Black, 613, 619. The principle is equally applicable here; for here, as there, it is a common burden that has been, in effect, purchased by one of the parties in interest; and the legal right of each party to demand that the burden arising from the whole loss shall be shared equally and in common, so far as this is within the control of the court, must, therefore, preclude the respondents, or Clyde & Co. as their agents and trustees, from recouping against the libelant more than one-half of the amounts actually paid for the assigned claims, with interest.

2. The value of the Knight at the time of the loss was the subject of a remarkable conflict in the testimony. Considering, however, the age of the vessel, her antique model, the little call for such vessels ever since this collision, and the small earning capacity of her consort, as well as the conflict in the direct testimony as to her value, I think that $8.000 will be a sufficient allowance for the Knight at the time of the loss. The other exceptions are over-ruled